PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

In Re: ABDULAZIZ SALEM TAMIMI,
Debtor-in-possession.

SAUDI ARABIAN AIRLINES
CORPORATION,                                    No. 98-1423
Garnishee-Appellant,

v.

SHARON L. TAMIMI,
Creditor-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-97-1004-A)

Argued: January 27, 1999

Decided: May 21, 1999

Before WIDENER, MURNAGHAN, and HAMILTON,
Circuit Judges.

_____

Remanded with instructions to dismiss by published opinion. Judge
Hamilton wrote the opinion, in which Judge Widener and Judge
Murnaghan joined.

_____

COUNSEL

ARGUED: William Arthur Nelson, Arlington, Virginia, for Appel-
lant. Gordon Bertram Gray, Falmouth, Virginia, for Appellee.

**OPINION**

HAMILTON, Circuit Judge:

Saudi Arabian Airlines Corporation (Saudi) appeals the district court's denial of its motion to dismiss the garnishment action brought against it by Sharon L. Tamimi. <u>See</u> Fed. R. Civ. P. 12(b)(1). For the reasons that follow, we remand this matter to the district court with instructions to dismiss for lack of subject-matter jurisdiction under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C.§ 1602 <u>et seq.</u>

I.

Abdulaziz Tamimi (Abdulaziz) and Sharon L. Tamimi (Sharon) were married on May 19, 1978 in Columbus, Ohio. The couple has two minor children. Abdulaziz is an employee of Saudi, a foreign corporation wholly owned by the country of Saudi Arabia. Abdulaziz has worked for Saudi, both in the United States and in Saudi Arabia, from 1990 to the present.

In January 1992, Abdulaziz deserted Sharon and their two minor children, filed for bankruptcy under the laws of the United States, and returned to Saudi Arabia. Sharon then commenced an action in the Circuit Court for Stafford County, Virginia seeking: (1) divorce from Abdulaziz; (2) custody of the two minor children; and (3) support from Abdulaziz. Sharon was awarded custody of the two minor children and child support in the amount of $448 per month. While Sharon's divorce case was pending in the Circuit Court for Stafford County, Abdulaziz divorced Sharon, without notice or proceedings, in Saudi Arabia under the laws of that country. Abdulaziz subsequently remarried and now has two children from his second marriage.

In January 1996, Abdulaziz returned to the United States with his new wife so she could give birth to one of their children. On January 13, 1996, Abdulaziz was arrested in Virginia for the criminal charge of non-payment of child support to Sharon. Bail was set for $21,000, the amount of child support in arrears. Abdulaziz did not post bail, and on February 5, 1996, the Stafford County Juvenile and Domestic Relations Court (the Domestic Relations Court) took up the matter.

2

At that time, upon motion of all the parties, the case was continued until February 8, 1996. Abdulaziz was released on his own recognizance on the conditions that he remain in the United States, surrender his passport to the Domestic Relations Court, and return to the Domestic Relations Court on February 8, 1996.

On February 6, 1996, Saudi sent Sharon a letter (Letter), signed by Saleh A. Sulaiman, the Senior Manager of Government Relations at Saudi, that stated that Abdulaziz had "irrevocably authorized and directed Saudi Arabian Airlines to deduct from his salary up to $500 (Five Hundred Dollars) per month for child support payment. . . ." (J.A. 19). Saudi further pledged to "implement the terms of this letter as long as [Abdulaziz] is working for [Saudi]." Id.

On February 8, 1996, the Domestic Relations Court ordered that Abdulaziz's passport be returned after he paid Sharon $1000. The Domestic Relations Court further ordered that the criminal case be continued until February 8, 1997, at which time the Domestic Relations Court would review the criminal case and dismiss it, provided that Abdulaziz made child support payments of $500 per month ($448 in support and $52 to be applied to the arrearage).

On February 11, 1997, the Domestic Relations Court took up the criminal case again. Abdulaziz was present; however, when the Domestic Relations Court requested information pertaining to his income, Abdulaziz claimed not to know his salary from Saudi or the exchange rate to convert that figure from Saudi reyals to United States dollars. The case was continued until April 8, 1997, at which time Abdulaziz was to reappear with the requisite information. Abdulaziz did not appear in Domestic Relations Court on April 8, 1997, and a warrant for his arrest was issued; the record is silent as to the current status of this warrant. The Domestic Relations Court also adjusted Abdulaziz's child support obligations to $967.86 per month.[1] Abdulaziz currently remains under an order from the Domestic Relations Court to pay child support in the amount of $967.86 per month.

_____

[1] Unlike its order in February 1996, the Domestic Relations Court did not state what amount of the $967.86, if any, was to be applied to the child support in arrears.

3

On that same day, April 8, 1997, the Domestic Relations Court granted Sharon judgment for the child support arrearage in the amount of $16,710.00.[2] The Domestic Relations Court then issued a garnishment summons that was served on Saudi and Abdulaziz, through Saudi's attorney. The summons was for the $16,710 in child support arrearage, plus $432.60 in interest and $71.50 in costs, totaling $17,222.10.

To collect the child support arrearage, Sharon proceeded with a garnishment action in the Circuit Court for Stafford County, Virginia to garnish the monthly salary of Abdulaziz. On June 27, 1997, pursuant to 28 U.S.C. § 1441(d), Saudi, as the garnishee, removed the garnishment action to the United States District Court for the Eastern District of Virginia. On July 7, 1997, Saudi filed a motion to dismiss, see Fed. R. Civ. P. 12(b)(1), asserting that it is a "foreign state" within the meaning of § 1603 of the FSIA and, therefore, entitled to sovereign immunity from court actions, including garnishment actions. In her answer to Saudi's motion to dismiss, Sharon produced the Letter, and the district court held, on the basis of the Letter, that Saudi had waived, by implication, its sovereign immunity under§ 1605(a)(1) of the FSIA. The district court alternatively held that, because Saudi is an airline that regularly conducts business in the United States and in Virginia, it was not entitled to sovereign immunity under the "commercial activity" exception contained in the FSIA. See 28 U.S.C. § 1605(a)(2). Accordingly, Saudi's motion to dismiss was denied by the district court.

Subsequently, Saudi renewed its motion to dismiss claiming that the district court misapplied the law of sovereign immunity and its exceptions under the FSIA. On February 20, 1998, the district court denied Saudi's renewed motion to dismiss. Saudi noticed this timely appeal.

_____

**2** Abdulaziz made the required support payments of $500 from February 1996 to April 1997 and has continued to make the requisite support payments of $967.86 from April 1997 to the present time.

4

II.

Saudi contends that the district court erroneously denied its motion to dismiss by misapplying the law of sovereign immunity and its exceptions under the FSIA. We review applications of the FSIA de novo. See Drexel Burnham Lambert v. Committee of Receivers, 12 F.3d 317, 324 (2d Cir. 1993).

The FSIA sets forth the sole and exclusive standards to be used to resolve sovereign immunity issues raised by a foreign state in federal and state courts. See Argentine Republic v. Amerada Hess Shipping, 488 U.S. 428, 434 (1989); Arriba Ltd. v. Petroleos Mexicanos, 962 F.2d 528, 532 (5th Cir. 1992). The FSIA provides that:

> [s]ubject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and the States except as provided in sections 1605 to 1607 of this chapter.

28 U.S.C. § 1604.

Under the FSIA, a foreign state is entitled to sovereign immunity unless the plaintiff demonstrates that one of the exceptions to sovereign immunity applies. See Arriba Ltd., 962 F.2d at 533. If no exception to sovereign immunity is applicable, courts "lack[ ] both statutory subject-matter jurisdiction and personal jurisdiction." Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 485 n.5 (1983).

The FSIA defines a "foreign state" as "a political subdivision of a foreign state or an agency or instrumentality of a foreign state. . . ." 28 U.S.C. § 1603(a). The FSIA defines an "agency or instrumentality of a foreign state" as:

> any entity . . . which is a separate legal person, corporate or otherwise, and . . . which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and . . . which is [not] a citizen of a state of the United States. . . .

5

28 U.S.C. § 1603(b)(1)-(b)(3).

Saudi is a corporation wholly owned by the country of Saudi Arabia and, therefore, is a "foreign state" under the FSIA. See Forsythe v. Saudi Arabian Airlines Corp., 885 F.2d 285, 287 n.1 (5th Cir. 1989); Branko Intn'l., Inc. v. Saudi Arabian Airlines, 704 F. Supp. 386, 387 (S.D.N.Y.), aff'd, 880 F.2d 1318 (2d Cir. 1989); In Re Disaster at Riyadh Airport, 540 F. Supp. 1141, 1150 (D.D.C. 1982). As a "foreign state," Saudi is entitled to sovereign immunity under the FSIA unless one of the exceptions to sovereign immunity applies. See Arriba Ltd., 962 F.2d at 532.

Only two of the FSIA's exceptions are at issue here, the exceptions regarding waiver and commercial activity. Section 1605(a)(1) contains the FSIA's waiver provision and states that:

> [a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver. .. .

28 U.S.C. § 1605(a)(1). Waiver under the FSIA is rarely accomplished by implication. See Rodriguez v. Transnave, Inc., 8 F.3d 284, 287 (5th Cir. 1993). Explicit waivers are more frequently honored. Id. Further, courts have consistently held that the implicit waiver provision of § 1605(a)(1) must be construed narrowly. See, e.g., Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438, 444 (D.C. Cir. 1990); Joseph v. Office of the Consulate General of Nigeria, 830 F.2d 1018, 1022 (9th Cir. 1987), cert. denied , 485 U.S. 905 (1988); Frolova v. Union of Soviet Socialist Republics, 761 F.2d 370, 377 (7th Cir. 1985). This approach is derived from the legislative history of the FSIA, in which Congress specified three examples of implicit waivers: (1) a foreign state has agreed to arbitration in another country; (2) a foreign state has agreed that a contract is governed by the law of a particular country; and (3) a foreign state has filed a responsive pleading in a case without raising the defense of sovereign immunity. See H. R. Rep. No. 1487, 94th Cong., 2d Sess. 18, reprinted in 1976 U.S. Code Cong. & Admin. News 6604, 6617; S. Rep. No. 1310, 94th Cong., 2d Sess. 18. "Since the FSIA became law, courts have been reluctant to stray beyond these examples when con-

6

sidering claims that a nation waived its defense of sovereign immunity." Frolova, 761 F.2d at 377. These three examples involve circumstances in which the implicit waiver was unmistakable; courts have consistently refused to find an implicit waiver where the circumstances are not similarly unambiguous. See Shapiro v. Republic of Bolivia, 930 F.2d 1013, 1017 (2d Cir. 1991).

In the instant case, Sharon claims that the Letter, sent to her by Saudi, constitutes an implicit waiver under § 1605(a)(1). Saudi argues that no implicit waiver has occurred. Since the parties agree that the Letter contains no explicit waiver, we must determine if it contains an implicit waiver. The Letter reads, in its entirety:

> This letter is being written to certify that [Abdulaziz] has irrevocably authorized and directed Saudi Arabian Airlines to deduct from his salary up to $500.00 (Five Hundred Dollars) per month for child support payments for Ramsey and Samirah Tamimi. The child support payments are to be sent to you monthly at the above address. The exact amount of the deduction from [Abdulaziz]'s salary, and the time period for which the deduction shall be made, will be as set forth in the order of the court of Stafford County.
>
> Saudi Arabian Airlines will undertake to implement the terms of this letter as long as [Abdulaziz] is working with Saudi Arabian Airlines. Nevertheless, this letter shall not be considered as a guarantee of any kind by Saudi Arabian Airlines.

(J.A. 19).

Under the case law and legislative history, this court can only find that the Letter constitutes an implicit waiver of sovereign immunity under the FSIA if we find that the Letter is strong, unmistakable evidence that Saudi intended to waive its sovereign immunity. See Transnave, 8 F.3d at 287. Unlike the district court, we do not believe the Letter meets such a standard. The Letter, by its own terms, is meant simply to notify Sharon that Abdulaziz had "irrevocably authorized and directed Saudi Arabian Airlines" to deduct child support payments from his salary in the future. (J.A. 19). The Letter also states that it "shall not be considered as a guarantee of any kind by Saudi Arabian Airlines." Id. The district court determined that such language was enough to waive immunity under FSIA. We disagree.

7

First, the situation here bears no resemblance to any of the three types of situations to which courts have generally limited findings of implicit waiver. Saudi's sending the Letter to Sharon is in no way akin to a foreign state agreeing to arbitration in another country, a foreign state agreeing that a contract is governed by the law of a particular country, or a foreign state filing a responsive pleading in a case without raising the defense of sovereign immunity.

Second, the Letter is inapplicable to the present garnishment action at issue, which seeks to recover child support payments that were in arrears prior to February 1996. Since Saudi <u>sent</u> the Letter to Sharon in February 1996, Abdulaziz, while not always timely, has met his current child support obligations. As a consequence, Sharon's garnishment action was brought solely to recover the $16,710 (plus costs and interest) of child support payments that were unpaid prior to February 1996 and remain in arrears. There is no evidence in the record that Saudi was even aware of the amounts in arrears at the time it sent the Letter to Sharon. In fact, the Letter looks to the future and states that the "exact amount of the deduction from[Abdulaziz's] salary . . . <u>will be as set forth</u> in the order of the court of Stafford County." <u>Id.</u> (emphasis added). The Letter does not address any amounts in arrears, it simply states that Abdulaziz has authorized Saudi to deduct, from that date forward, $500 from his salary each month for child support payments to Sharon. Therefore, the Letter is insufficient to qualify as an implicit waiver under the FSIA in this garnishment action by Sharon to recover the amount of child support payments that were and remain in arrears.**3**

The district court alternatively held that, because Saudi is an airline that regularly conducts business in the United States and in Virginia, it was not entitled to sovereign immunity under the"commercial activity" exception contained in the FSIA. <u>See</u> 28 U.S.C. § 1605(a)(2).**4**

_____

**3** We emphasize that our opinion addresses only whether Saudi is sovereignly immune from Sharon's garnishment action seeking to recover the child support payments in arrears. Under the facts presented, we express no opinion as to whether Saudi would be sovereignly immune from a garnishment action seeking to recover current child support obligations.
**4** Section 1605(a)(2) states that a foreign state will "not be immune from the jurisdiction of courts of the United States or States in any case . . . in which the action is based upon a commercial activity carried on in the United States by the foreign state . . . ." 28 U.S.C. § 1605(a)(2).

8

However, such a statement by the court is contrary to the Supreme Court's holding in <u>Saudi Arabia v. Nelson</u>, 507 U.S. 349 (1993). In <u>Nelson</u>, the Supreme Court wrote the following regarding the commercial activity exception in the FSIA:

> Congress manifestly understood there to be a difference between a suit "based upon" commercial activity and one "based upon" acts performed "in connection with" such activity. The only reasonable reading of the former term calls for something more than a mere connection with, or relation to, commercial activity.

<u>Id.</u> at 358. The court in <u>Stena Rederi AB</u> stated this same point well when it wrote that "there must be a connection between the plaintiff's cause of action and the commercial acts of the foreign sovereign" before the commercial activity exception applies. 923 F.2d at 386. The garnishment action brought by Sharon is not "based upon" the commercial activity of Saudi in the United States. Rather, at best, Sharon's garnishment action is "related to" the commercial activity of Saudi in the United States. Under such circumstances, the commercial activity exception does not apply. <u>See Nelson</u>, 507 U.S. at 358. Finally, the mere fact that Abdulaziz is an employee of Saudi does not alter the result. To hold otherwise would eviscerate sovereign immunity under the FSIA.

III.

For the reasons stated herein, we remand this matter to the district court with instructions to dismiss for lack of subject-matter jurisdiction under the FSIA.

<u>REMANDED WITH INSTRUCTIONS TO DISMISS</u>

9