UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

WORLD WIDE DEMIL, L.L.C.,
formerly known as Buck
Environmental Technologies,
L.L.C.,

*Plaintiff-Appellant,*

v.

NAMMO, A.S.,

*Defendant-Appellee.*

No. 02-1170

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Leonie M. Brinkema, District Judge.
(CA-00-1992-A)

Argued: October 30, 2002

Decided: November 22, 2002

Before WILKINS, NIEMEYER, and KING, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** James Arthur DeVita, WORLD WIDE DEMIL, L.L.C.,
McLean, Virginia, for Appellant. Richard Murray, POMPAN, MUR-
RAY & WERFEL, P.L.C., Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

This appeal stems from a series of interactions between Plaintiff World Wide Demil, L.L.C. ("WWD")[1] and Defendant Nammo, A.S. ("Nammo") during the fall and winter of 1998. WWD alleges that Nammo breached oral and written agreements into which Nammo and WWD had entered, tortiously interfered with WWD's contracts and business expectations, and conspired to injure WWD's reputation, trade, and business. The district court awarded summary judgment to Nammo on all counts, and WWD has appealed. We possess jurisdiction pursuant to 28 U.S.C. § 1291. As explained below, we affirm.

I.

The relevant facts are adequately set forth in the district court's opinion. *World Wide Demil, L.L.C. v. Nammo, A.S.*, No. 00-1992-A, Mem. Op. at 1-6 (E.D. Va. Jan. 18, 2002) (the "Opinion"). We write solely to address Nammo's contention that this action is barred by the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.* (the "FSIA"). Subject to several exceptions, the FSIA deprives federal and state courts of jurisdiction to adjudicate claims against foreign states or their instrumentalities. 28 U.S.C. §§ 1603-1607. A foreign state or instrumentality is defined to include any entity, a majority of whose shares are owned by a foreign country or governmental arm. 28 U.S.C. § 1603(b). An entity that comes within the protection of the FSIA "is entitled to sovereign immunity unless the plaintiff demonstrates that one of the exceptions to sovereign immunity applies." *In re Tamimi*, 176 F.3d 274, 278 (4th Cir. 1999). If no exception applies, then courts "lack[ ] both statutory subject-matter jurisdiction and . . .

[1]Until February of 1999, WWD was known as "Buck Environmental Technologies." For simplicity, we refer to the company throughout as WWD.

personal jurisdiction." *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 485 n.5 (1983).

We review applications of the FSIA de novo. *Tamimi*, 176 F.3d at 277. Nammo is a multinational joint venture between the government of Norway, the government of Finland, and SAAB, AB, a publicly held Swedish company. At the time of the acts that are the subject of this suit, the Royal Ministry of Trade and Industry of Norway owned 45% of Nammo; Patria Industries, a governmental instrumentality wholly owned by the Government of Finland, owned 27.5%; and SAAB, AB, owned the remaining 27.5%. Thus, when the ownership interests of Norway and Finland are "pooled," it appears that a majority of Nammo's shares were owned by foreign governments or their instrumentalities. Nammo contends that, because a majority of Nammo's shares were owned by foreign governments or their instrumentalities, Nammo is immune from suit under the FSIA.

Without deciding the propriety of such "pooling" of shares under the FSIA, and without deciding whether Nammo's ownership through wholly government-owned companies can render Nammo a protected "instrumentality of a foreign state" for purposes of 28 U.S.C. § 1603, we conclude that, with respect to WWD's breach of confidentiality claim, Nammo has implicitly waived any immunity to which it might otherwise have been entitled; and that, with respect to the remaining claims, Nammo falls outside of the FSIA by virtue of the Commercial Activities Exception.

### A.

Under 28 U.S.C. § 1605(a)(1), "[a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the foreign state has waived its immunity either explicitly or by implication . . . ." As this court has observed, "[w]aiver under the FSIA is rarely accomplished by implication." *Tamimi*, 176 F.3d at 278. However, in the legislative history of the FSIA, Congress specified three core examples of implicit waivers: (1) agreement to arbitration in another country; (2) agreement that a contract is governed by the law of a particular country; or (3) filing a responsive pleading without raising the defense of sovereign immunity. *See id.* (citing H.R. Rep. No. 1487, 94th Cong., 2d Sess. 18,

*reprinted in* 1976 U.S. Code Cong. & Admin. News 6604, 6617; S. Rep. No. 1310, 94th Cong., 2d Sess. 18). With respect to WWD's claim of breach of confidentiality, the second form of waiver —— agreement that a contract is governed by the law of a particular country —— is implicated here.[2]

On November 6, 1998, Nammo and WWD entered into the Confidentiality Agreement, which contained a choice of law provision selecting the Commonwealth of Virginia as the forum whose law would govern any disputes that might arise from the Agreement.[3] This clause constitutes an implicit waiver of any immunity to which Nammo might otherwise have been entitled with respect to WWD's claim that Nammo breached the Confidentiality Agreement. *See Eckert Int'l Inc. v. Government of Fiji*, 32 F.3d 77, 80 (4th Cir. 1994) ("[A] choice of law provision constitutes an implied waiver of . . . sovereign immunity."). Thus, the court had jurisdiction to entertain the breach of confidentiality count.

### B.

A waiver of FSIA immunity with respect to one claim does not constitute a waiver with respect to other claims brought in the same suit. *See World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296

---

[2]WWD argues that the third form of waiver also applies —— that Nammo has waived any immunity to which it would be entitled because it failed to include the FSIA defense in its July 13, 2001, Renewed Motion to Dismiss. However, a motion to dismiss is not a responsive pleading that triggers the third exception to FSIA immunity. *In re Republic of Philippines*, 2002 WL 31429850 (9th Cir. Oct. 31, 2002); *see also* Fed. R. Civ. P. 7 (distinguishing between "motions" and "pleadings"); *Mellon Bank, N.A. v. Ternisky*, 999 F.2d 791, 795 (4th Cir. 1993) (holding that a motion to dismiss is not a "pleading"). Because Nammo's August 7, 2001, Answer constituted its first "responsive pleading," and because the Answer included the FSIA defense, Nammo did not waive FSIA immunity by delinquency in asserting the defense.

[3]The forum selection clause of the confidentiality agreement provides: "Should individual terms of this agreement be or become completely or partially ineffective, the remaining terms will continue to be valid, and our obligations under this agreement will be governed by the laws of the State of Virginia."

F.3d 1154, 1164 (D.C. Cir. 2002). Thus, although Nammo has implicitly waived its immunity from claims springing from the Confidentiality Agreement, we must also assess whether the court had jurisdiction to entertain WWD's other claims against Nammo (specifically, tortious interference with contract, tortious interference with prospective business advantage, conspiracy, and breach of oral contract). Even if FSIA immunity attached, the court nonetheless had jurisdiction, because WWD's remaining claims are based on Nammo's commercial activities. A portion of those activities occurred here in the United States; and a portion occurred abroad, but directly affected an American corporation.

Under the Commercial Activity Exception to the FSIA, 28 U.S.C. § 1605(a)(2),

> [a] foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case . . . in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States . . . .

The Exception applies "when a foreign government acts, not as regulator of a market, but in the manner of a private player." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992). The fact that a foreign state has engaged in commercial activities does not necessarily bring the Exception into play; rather, the Exception applies only if the plaintiff's claim is "based upon" those activities. *Saudi Arabia v. Nelson*, 507 U.S. 349, 357-59 (1993). However, even a single commercial act, such as negotiating or entering into a contract, is sufficient to trigger the Exception if the act is of a type that a private person would customarily engage in for profit. *S & Davis Int'l, Inc. v. Yemen*, 218 F.3d 1292, 1302 (11th Cir. 2000) (citing legislative history); *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445,452-53 (6th Cir. 1988). The act need not occur in the United States, so long as it has a "direct effect" here. 28 U.S.C. § 1605(a)(2). And that effect need be neither substantial nor foreseeable. *See Republic of Argen-*

*tina*, 504 U.S. at 618 ("[W]e reject the suggestion that § 1605(a)(2) contains any unexpressed requirement of 'substantiality' or 'foreseeability.'").

Nammo unquestionably engaged in commercial activities in the United States, and those activities form the basis for WWD's breach of oral contract claim. Specifically, Nammo engaged in negotiations with WWD in McLean, Virginia, on November 22 and 23, 1998; WWD alleges that those negotiations culminated in an oral contract. Hence, it is those Virginia negotiations that form the basis for WWD's breach of oral contract claim. Consequently, the Commercial Activities Exception embodied in § 1605(a)(2) applies and Nammo is deprived of any FSIA protection to which it might otherwise have been entitled for the breach of oral contract count.

Nammo also is alleged to have engaged in commercial activities outside of the United States that caused a direct and injurious effect on WWD, an American corporation. Those activities form the basis for WWD's remaining claims of tortious interference with contract, tortious interference with prospective business advantage, and conspiracy. Specifically, Nammo is alleged to have tortiously interfered with WWD's contracts and prospective business advantage when, in Norway on February 26, 1999, it reneged on an oral agreement with WWD, depriving WWD of access to the subcontractor on which WWD was relying in order both to perform the Air Force Contract, and to secure the Army Contract. Furthermore, Nammo is alleged to have conspired with the German bankruptcy receiver of a WWD subcontractor to injure WWD in its reputation, trade, and business when, in Germany on January 26, 1999, Nammo induced the receiver to inform the United States government both that WWD and the subcontractor no longer had a binding subcontract, and that WWD was in a precarious financial position. These are the acts not of a sovereign, but of a private market player. Because they are alleged to have inflicted direct and immediate harm on WWD, and because they are the basis for WWD's claims against Nammo, these extraterritorial commercial acts again trigger the Commercial Activities Exception. Nammo is accordingly deprived of any FSIA protection to which it might otherwise have been entitled for the tortious interference and conspiracy counts. Consequently, both the court below and this court

have subject matter jurisdiction to entertain WWD's complaint against Nammo.

## II.

For the reasons set forth in the district court's Opinion, which we are content to adopt, we affirm the district court's award of summary judgment in favor of Nammo.[4]

*AFFIRMED*

---

[4]WWD also maintains on appeal that the court abused its discretion in refusing to permit WWD to supplement its Rule 26(a)(2) expert disclosures after the time specified in the court's scheduling order had expired. *See World Wide Demil, L.L.C. v. Nammo, A.S.*, No. 00-1992-A, Order at 1 (E.D. Va. Nov. 30, 2001). A trial court has wide latitude in imposing sanctions on parties who fail to comply with pretrial orders and procedures. *See Rambus Inc. v. Infineon Techs., A.G.*, 145 F. Supp. 2d 721, 736 (E.D. Va. 2001). We see no abuse of discretion in this ruling, and we affirm the court's handling of the matter without further discussion.