309 F.3d 1143
 In re REPUBLIC OF THE PHILIPPINES;
In re Presidential Commission on Good Government,
The Republic of the Philippines; Presidential Commission on Good Government, Petitioners,
v.
United States District Court for the District of Hawaii, Respondent,
Arelma Inc.; Merrill Lynch, Pierce, Fenner & Smith, Inc.; Suntrust Investment Co., S.A.; John K. Burns; Estate of Ferdinand E. Marcos, Imelda
R. Marcos, Ferdinand R. Marcos, Jr., Maria Imelda Marcos, Irene Marcos Araneta; Frontier Risk Capital Management L.L.C.; ENC Corporation; Grosvenor Capital, Ltd.; Estate of Roger Roxas; the Golden Budha Corporation; Mariano J. Pimentel, on behalf of himself and all other persons similarly situated, Real Parties in Interest.
Merrill Lynch, Pierce, Fenner & Smith, Incorporated, a corporation organized and existing under the laws of the State of Delaware with its principal place of business in New York, NY, Plaintiff-Appellee,
v.
Arelma Inc.; ENC Corporation; Suntrust Investment Co., S.A.; John K. Burns; the Estate of Ferdinand Marcos; Imelda R. Marcos; Ferdinand R. Marcos, Jr.; Maria Imelda Marcos; Irene Marcos Araneta; Frontier Risk Capital Management, L.C.C.; Grosvenor Capital, Ltd.; the Estate of Roger Roxas; Golden Budha Corp.; Mariano J. Pimentel; Philippine National Bank, Defendants, and
Presidential Commission on Good Government, a government agency of the Republic of the Philippines; Republic of the Philippines, Defendants-Appellants.
 No. 01-71841.
 No. 02-15340.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 14, 2002.
 Filed October 31, 2002.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Stephen V. Bomse, Rachel M. Jones, Heller, Ehrman, White & McAuliffe, LLP, San Francisco, CA, for the defendants-appellants.
 Jay R. Ziegler, Buchalter, Nemer, Fields & Younger, Los Angeles, CA, for the defendants-appellees.
 Robert A. Swift, Kohn, Swift & Graf, PC, Philadelphia, PA, for the defendants-appellees.
 Daniel C. Cathcart, Magaña, Cathcart & McCarthy, Los Angeles, CA, for the defendants-appellees.
 A. Robert Pietrzak, Sidley, Austin, Brown & Wood, LLP, New York, NY, for the plaintiff-appellee.
 Jeffrey S. Portnoy, Cades, Schutte, Fleming & Wright, Honolulu, HI, for the plaintiff-appellee.
 Appeal from the United States District Court for the District of Hawaii; Manuel L. Real, District Judge, Presiding. D.C. No. CV-00-00595-MLR.
 Before: SCHROEDER, Chief Judge, HARLINGTON WOOD, JR.,[1] and D.W. NELSON, Circuit Judges.
 SCHROEDER, Chief Judge.
 
 
 1
 This interpleader litigation is part of an on-going dispute between the Philippine government and creditors of the Estate of Ferdinand E. Marcos over assets Marcos allegedly secreted from the government while he was President of the Philippines. This litigation concerns the assets of Arelma Incorporated, a Panamanian company Marcos created. The assets were held in an account in New York by Merrill Lynch, the plaintiff in this action, until the assets were turned over to the district court in September 2000.
 
 
 2
 The defendant creditors include human rights victims whose claims we upheld in Hilao v. Estate of Marcos, 103 F.3d 767 (9th Cir.1996). The Republic of the Philippines ("Republic") is also a defendant in this action as is the Presidential Commission on Good Government ("PCGG"), an agent or instrumentality of the Republic.
 
 
 3
 This is an appeal by the Republic and the PCGG from the district court's ruling on two motions to dismiss them as parties to the suit: the Republic and the PCGG's own motion to dismiss on sovereign immunity grounds and the creditors' motion to dismiss the Republic and the PCGG on the basis that they are not real parties in interest. The district court granted the creditors' motion to dismiss and the Republic and the PCGG appeal. We reverse because we hold that the district court should have dealt with immunity first and that the Republic and the PCGG are immune from suit.
 
 PROCEDURAL BACKGROUND
 
 4
 In 1972, Marcos transferred approximately $2 million to Arelma, placing the money in an account with Merrill Lynch in New York. After Marcos was deposed in 1986, President Corazon Aquino created the PCGG, an agency charged with recovering assets of the Republic that were wrongfully acquired by Marcos while he was in office. In July 2000, the PCGG asked Merrill Lynch to turn over the Arelma assets to the Philippine National Bank ("PNB"). The PCGG proposed that the PNB act as an escrow agent and hold the assets pending a ruling in the Sandiganbayan, a Philippine anti-corruption court, on whether the assets belonged to the Republic or the Marcos Estate.
 
 
 5
 Merrill Lynch denied the request, apparently because of the existence of other claimants, and instead filed this interpleader action in the U.S. District Court for the District of Hawaii on September 14, 2000, seeking to resolve conflicting claims to the Arelma assets. The complaint named as defendants several possible claimants. They included the Republic, the PCGG, Arelma, the Estate of Roger Roxas, the Golden Budha Corporation, and Mariano J. Pimentel. The Roxas Estate and Golden Budha assert claims as judgment creditors of the Marcos Estate on the basis of judgments obtained in state courts. Pimentel is a member of the plaintiff class of human rights victims that obtained a judgment against the Estate on February 3, 1995. See Hilao v. Estate of Marcos, 103 F.3d 767 (9th Cir.1996). The district court granted Pimentel's motion to join the PNB in May 2001.
 
 
 6
 The Republic and the PCGG moved to dismiss the interpleader arguing, inter alia, that they were entitled to sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1604. Pimentel also moved to dismiss the Republic and the PCGG claiming that they were not real parties in interest. The Republic and the PCGG then asked the court to determine their immunity and dismiss the action because they claimed they were indispensable parties. Fed.R.Civ.P. 19(b). The district court held a telephonic hearing on September 24, 2001.
 
 
 7
 At that hearing, the district court said that it was granting Pimentel's motion to dismiss the Republic and the PCGG because the court found they were not real parties in interest. The court declined to decide any issue of sovereign immunity. The district court then entered a written order on December 20, 2001, that stated:
 
 
 8
 Defendants PNB, with offices in Honolulu, and Arelma are the real parties in interest as to claims that may be proffered by the Republic and PCGG, and the former are capable of asserting claims to the assets that had been held by Merrill Lynch in account No. 165-07312 in the name of Arelma (the "Assets") and were deposited by Merrill Lynch with the Court, including the claim that the source of the Assets was stolen. The Republic and PCGG have both sought to be dismissed from the lawsuit on various grounds and have averred under oath that PNB has exclusive authority to control the assets at issue. Therefore, defendants PNB and Arelma are the real parties in interest as to claims that the Republic and PCGG may make in this interpleader proceeding.
 
 
 9
 The court denied as moot the Republic and the PCGG's motion to dismiss on sovereign immunity and ruled that "neither the Republic nor PCGG are necessary or indispensable parties in this litigation." The district court also continued its prior injunction that enjoined defendants named in the interpleader from bringing any further actions in the United States to pursue the Arelma assets. The Republic and PCGG appeal their dismissal on the merits and the denial of their motion for dismissal based on sovereign immunity.
 
 
 10
 Because denial of a motion to dismiss on grounds of foreign sovereign immunity may result in the parties having to litigate claims over which the court lacks jurisdiction, we permit an interlocutory appeal from the denial of a motion to dismiss on sovereign immunity grounds. See Schoenberg v. Exportadora de Sal, S.A., 930 F.2d 777, 779 (9th Cir.1991) (denial of motion to dismiss on grounds of foreign sovereign immunity is an appealable interlocutory order under collateral order doctrine). It is on that basis that we exercise jurisdiction over this appeal. We deny as moot appellants' mandamus petition filed as an alternative route to jurisdiction.
 
 IMMUNITY UNDER THE FSIA
 
 11
 The effect of the district court's ruling was to adjudicate the merits of the Republic's claim to the assets and thus effectively deny its claim to sovereign immunity. The district court determined that the Republic and the PCGG had no claim to the Arelma assets, thus proceeding to the heart of the dispute, without first determining whether the Republic and the PCGG had sovereign immunity. We agree with the Republic that the district court should have addressed the merits of the immunity question first in order to preserve the immunity that may be determined to exist. See Phaneuf v. Republic of Indonesia, 106 F.3d 302, 305 (9th Cir.1997) (noting that "[i]mmunity under the FSIA is not only immunity from liability, but immunity from suit"); Siderman de Blake v. Republic of Argentina, 965 F.2d 699, 706 (9th Cir.1992) (stating that before reaching the merits of a claim against a foreign state, court should determine whether it has jurisdiction under the FSIA).
 
 
 12
 The FSIA provides the sole basis for subject matter jurisdiction over foreign states and their agents or instrumentalities. See 28 U.S.C. § 1604. The FSIA provides that a foreign state is immune from the jurisdiction of U.S. courts unless one of the statutory exceptions applies. 28 U.S.C. §§ 1604, 1605. The creditors do not dispute that the Republic and the PCGG are, respectively, a foreign state and its instrumentality within the meaning of the FSIA. 28 U.S.C. § 1603. The creditors, however, have the burden of establishing that one of the statutory exceptions applies. See Siderman, 965 F.2d at 707. The only two exceptions claimed to be applicable here are the "successor" exception, 28 U.S.C. § 1605(a)(4), and the "implied waiver" exception, 28 U.S.C. § 1605(a)(1).[2]
 
 
 13
 The "successor" exception provides that a foreign state is not immune if "rights in property in the United States acquired by succession or gift or rights in immovable property situated in the United States are in issue." 28 U.S.C. § 1605(a)(4). The creditors argue that because some of them are judgment creditors of Marcos' family members that inherited the Marcos Estate, succession rights are "in issue" in the interpleader action within the meaning of the statute. The creditors do not contend that the Republic has acquired any right by succession. They argue that the statute requires only that some rights acquired by succession be "in issue" in the case, not necessarily the rights of the foreign sovereign. The creditors' interpretation of the statute is not supported by the statute, the legislative history, or principles of international law. For the reasons we now explain, we conclude the exception applies only when the sovereign's claim is as a successor to a private party.
 
 
 14
 The FSIA's exceptions focus on actions taken by or against a foreign sovereign. For example, § 1605(a)(1) provides that a foreign state is not entitled to immunity if the state either explicitly or implicitly waives immunity. Another exception provides that a foreign state does not have immunity when it carries out commercial activity in the United States ... § 1605(a)(2). Yet another exception applies when a party asserts a claim for money damages "against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States." 28 U.S.C. § 1605(a)(5).
 
 
 15
 The legislative history to the FSIA also indicates that the "successor" exception is concerned with rights acquired by a foreign sovereign. The House Report stated:
 
 
 16
 There is general agreement that a foreign state may not claim immunity when the suit against it relates to rights in property, real or personal, obtained by gift or inherited by the foreign state and situated or administered in the country where the suit is brought . . . The reason is that, in claiming rights in a decedent's estate or obtained by gift, the foreign state claims the same right which is enjoyed by private persons.
 
 
 17
 H. Rep. No. 94-1487, 94th Cong.2d sess. 6619. Thus, because the Republic is not a party by virtue of its succession to a private party's claim or putative liability, the exception does not apply in this case.
 
 
 18
 Any remaining doubt is resolved by looking to broader statements of international law. The Restatement (Third) of Foreign Relations Law states that under international law, "a state is not immune from the jurisdiction of the courts of another state with respect to claims ... to property, whether tangible or intangible, acquired by the state through succession or gift." Restatement (Third) of Foreign Relations Law § 455(1)(b) (1987). The Restatement also states that "[c]ourts in the United States may exercise jurisdiction over claims against a foreign state relating to property ... [acquired by the state through succession or gift] ... when the property is in the United States." Id. § 455(2). The focus is thus on whether the foreign state has acquired by succession, not whether any party to the action has acquired a right by succession.
 
 
 19
 The creditors also claim that the FSIA's "implied waiver" exception applies. 28 U.S.C. § 1605(a)(1). The "implied waiver" exception is construed narrowly. However, we generally find an implied waiver in only three circumstances:
 
 
 20
 (1) a foreign state has agreed to arbitration in another country; (2) a foreign state has agreed that a contract is governed by the law of a particular country; and (3) a foreign state has filed a responsive pleading in a case without raising the defense of sovereign immunity.
 
 
 21
 Joseph v. Office of the Consulate General of Nigeria, 830 F.2d 1018, 1022 (9th Cir. 1987). None of these circumstances exist. There has been no consent to arbitration in this country; there is no contractual foreign law provision; and the Republic has consistently maintained its defense of immunity in this action. A motion to dismiss, which the Republic has filed, is not a responsive pleading. Fed.R.Civ.P. 12(b). The Republic and the PCGG in asserting their immunity on appeal state that they do not object to a stay of the interpleader action if we do not order the case dismissed entirely, but this procedural concession to protect their immunity is not a waiver of immunity as the creditors try to suggest.
 
 
 22
 The creditors point to a Philippine Executive Order as proof that the Republic intended to waive its sovereign immunity. Executive Order No. 2 authorizes the PCGG "to request and appeal to foreign governments wherein any such assets or properties may be found to freeze them and otherwise prevent their transfer, conveyance, encumbrance, concealment or liquidation by former President Ferdinand E. Marcos ... pending the outcome of appropriate proceedings in the Philippines." The order does not refer to instituting court proceedings outside the Philippines and on its face contemplates executive action by foreign governments.
 
 
 23
 The creditors finally argue that we should nevertheless remand the case to the district court for discovery on the sovereign immunity issue. They have not, however, pointed to any discovery that would help support their claim that the exceptions they assert apply in this case. We conclude that the Republic and the PCGG are immune from suit under the FSIA and the district court should have granted their motion to dismiss them as parties on that ground.
 
 DISMISSAL OF INTERPLEADER ACTION UNDER RULE 19
 
 24
 The Republic and the PCGG go on to contend that not only must they be dismissed as parties, but that the entire interpleader action must be dismissed because they are necessary and indispensable parties. Fed.R.Civ.P. 19. The PNB and Arelma join in this argument. We first determine whether an absent party is "necessary" to the action in order to protect its own interests, and if so, we then determine whether the suit should not proceed in that party's absence because it is "indispensable." Shermoen v. United States, 982 F.2d 1312, 1317 (9th Cir.1992).
 
 
 25
 Rule 19(a) provides that a party is necessary and "shall be joined if feasible" in the following situations:
 
 
 26
 (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.
 
 
 27
 Fed.R.Civ.P. 19(a). Rule 19(a) is intended "to protect a party's right to be heard and to participate in adjudication of a claimed interest." Shermoen, 982 F.2d at 1317. Thus, if the Republic's claim to the Arelma assets was represented by one of the other claimants, then the Republic is not a necessary party.
 
 
 28
 The creditors contend that other claimants, Arelma and the PNB, can adequately represent the interests of the Republic and the PCGG. The Republic and PCGG maintain they are necessary parties because their claim, that the Arelma assets were misappropriated and have always belonged to the Republic, is one made by no other party. Arelma and the PNB agree.
 
 
 29
 The Republic and the PCGG are correct that they assert a claim distinct from those asserted by Arelma and the PNB. Without the Republic and the PCGG as parties in this interpleader action, their interests in the subject matter are not protected. The Republic and the PCGG are therefore necessary parties. We turn to whether they are indispensable.
 
 
 30
 A party is indispensable under Rule 19(b) if in "equity and good conscience," the court should not allow the action to proceed in its absence. Fed. R.Civ.P. 19(b). See also Dawavendewa v. Salt River Project Agric. Improvement and Power Dist., 276 F.3d 1150, 1161 (9th Cir.2002). The Rule sets forth four factors:
 
 
 31
 [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.
 
 
 32
 Fed.R.Civ.P. 19(b).
 
 
 33
 This is an interpleader action. The purpose of such an action is to resolve in one proceeding all claims to a res. See Commercial Union Ins. Co. v. United States, 999 F.2d 581, 583 (D.C.Cir.1993). Without all significant claimants in an interpleader action, its purpose is materially frustrated. Id. Given the inability of the court to resolve the claims of the Republic and the PCGG, it is difficult to see how this interpleader action can proceed in their absence. Although this strongly suggests they are indispensable, under Rule 19 the court is permitted to take into account the equitable circumstances of the other parties in considering whether a case may go forward even in the absence of a necessary party.
 
 
 34
 The creditors contend the action should go forward because they lack an alternative forum for the resolution of their claims, because the Philippine court, the Sandiganbayan, will apparently decide only disputes between the Republic and the Marcos Estate. This lack of an alternative forum normally weighs heavily against dismissal of the action. See Dawavendewa, 276 F.3d at 1161-62. This, however, is an interpleader action that has as its core purpose the resolution of all competing claims. In the absence of parties with substantial claims like those of the Republic and the PCGG, this interpleader action cannot presently proceed.
 
 
 35
 Merrill Lynch also opposes dismissal contending that its interest will be severely prejudiced if the case is dismissed entirely, because it would be subject to competing claims that would be filed in different jurisdictions and result in potentially conflicting judgments. Merrill Lynch therefore asks that in the event we conclude that the Republic and PCGG are necessary parties, as we have, we enter a stay of the litigation pending resolution of claims in the Philippines.
 
 
 36
 The Republic and the PCGG agree to such a stay as an alternative to their preferred remedy of dismissal of the entire interpleader action. We believe in light of concerns expressed by the creditors about the adequacy of the Republic's forum, a stay may further the creditors' interests as well as Merrill Lynch's, in the event that later developments may render it more equitably feasible for proceedings to go forward in this case. Such developments might include resolution of the litigation in the Philippines or a change in the immunity status of the Republic and PCGG.
 
 
 37
 Accordingly, the district court's order dismissing the Republic and the PCGG on the merits is vacated. The matter is remanded for entry of an order granting the Republic and the PCGG's motion to dismiss on the grounds of sovereign immunity and entry of a stay of further proceedings.
 
 
 38
 REVERSED AND REMANDED.
 
 
 
 Notes:
 
 
 [1]
 The Honorable Harlington Wood, Jr., Senior Circuit Judge of the Seventh Circuit, sitting by designation
 
 
 [2]
 28 U.S.C. § 1605 provides:
 (a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case —
 (1) in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;
 (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;
 (3) in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States;
 (4) in which rights in property in the United States acquired by succession or gift or rights in immovable property situated in the United States are in issue;
 (5) not otherwise encompassed in paragraph (2) above, in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except this paragraph shall not apply to —
 (A) any claim based upon the exercise or performance or the failure to exercise or perform a discretionary function regardless of whether the discretion be abused, or (B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights;
 (6) in which the action is brought, either to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration all or any differences which have arisen or which may arise between the parties with respect to a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration under the laws of the United States, or to confirm an award made pursuant to such an agreement to arbitrate, if (A) the arbitration takes place or is intended to take place in the United States, (B) the agreement or award is or may be governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards, (C) the underlying claim, save for the agreement to arbitrate, could have been brought in a United States court under this section or section 1607, or (D) paragraph (1) of this subsection is otherwise applicable; or (7) not otherwise covered by paragraph (2), in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources (as defined in section 2339A of title 18) for such an act if such act or provision of material support is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency, except that the court shall decline to hear a claim under this paragraph —
 (A) if the foreign state was not designated as a state sponsor of terrorism under section 6(j) of the Export Administration Act of 1979 (50 U.S.C.App. 2405(j)) or section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371) at the time the act occurred, unless later so designated as a result of such act or the act is related to Case Number 1:00CV03110(EGS) in the United States District Court for the District of Columbia; and (B) even if the foreign state is or was so designated, if —
 (i) the act occurred in the foreign state against which the claim has been brought and the claimant has not afforded the foreign state a reasonable opportunity to arbitrate the claim in accordance with accepted international rules of arbitration; or ii) neither the claimant nor the victim was a national of the United States (as that term is defined in section 101(a)(22) of the Immigration and Nationality Act) when the act upon which the claim is based occurred.
 (b) A foreign state shall not be immune from the jurisdiction of the courts of the United States in any case in which a suit in admiralty is brought to enforce a maritime lien against a vessel or cargo of the foreign state, which maritime lien is based upon a commercial activity of the foreign state ...