**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EMBASSY OF THE ARAB REPUBLIC OF
EGYPT; THE ARAB REPUBLIC OF
EGYPT; THE CULTURAL AND
EDUCATIONAL BUREAU,
            *Defendants-cross-defendants-*
                        *Appellants,*

            v.

MOHAMED E. LASHEEN,
                        *Plaintiff-Appellee,*

THE LOOMIS COMPANY,
            *Defendant-cross-claimant-*
                        *Appellee.*

No. 08-15486

D.C. No.
2:01-CV-00227-
LKK-EFB

OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence K. Karlton, District Judge, Presiding

Argued and Submitted
December 8, 2009—San Francisco, California

Filed May 10, 2010

Before: Mary M. Schroeder and Consuelo M. Callahan,
Circuit Judges, and Carlos F. Lucero,* Circuit Judge.

Opinion by Judge Lucero

---

*The Honorable Carlos F. Lucero, Circuit Judge for the Tenth Circuit,
sitting by designation.

6845

## COUNSEL

Randy M. Andrus, Andrus Attorneys, Folsom, California, for Mohamed E. Lasheen.

Laura D. Castner, Zuber & Tallieu LLP, Los Angeles, California, for the Embassy of the Arab Republic of Egypt, Arab

Republic of Egypt, and The Embassy of Egypt Cultural and Education Bureau.

John S. Pierce, Barger & Wolen LLP, San Francisco, California, for The Loomis Company.

---

## OPINION

LUCERO, Circuit Judge:

We consider the appeal of the Arab Republic of Egypt, the Embassy of the Arab Republic of Egypt, and the Embassy of Egypt Cultural and Educational Bureau (collectively, the "Egyptian Defendants"). The Egyptian Defendants seek reversal of a district court judgment denying their claim of immunity under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602-1611, from claims brought by the Loomis Company and the estate of Mohamed E. Lasheen.[1] The district court determined that it possessed subject matter jurisdiction over the Egyptian Defendants under both the commercial activities exception and the waiver exception to the FSIA. We affirm in part, reverse in part, and remand to the district court to determine in the first instance whether the Egyptian Defendants are immune from Lasheen's claims.

## I

Lasheen was an Egyptian national who came to the United States as a visiting scholar in March 2000 and enrolled in the Embassy of Egypt Health Care Benefits Plan (the "Plan"). Loomis, a Pennsylvania-based corporation authorized to do business in California, contracted with the Cultural and Educational Bureau to provide administrative services for the Plan pursuant to a Benefit Services Management Agreement (the

---

[1] We use "Lasheen" to refer to both Mohamed Lasheen and his estate.

"Agreement"). The Agreement provides that "the Cultural and Educational Bureau, Embassy of Egypt" would indemnify Loomis and "hold it harmless against loss, damage, and expense, including attorneys' fees, occasioned by claims, demands or lawsuits brought against [Loomis] to recover benefits under the [Plan]."

While enrolled in the Plan, Lasheen was diagnosed with liver cancer. He requested coverage for a liver transplant, but Loomis denied his request on the ground that his health problems resulted from a preexisting condition not covered by the Plan. Lasheen died in December 2000 as a result of his illness.

In February 2001, Lasheen's estate sued Loomis and the Egyptian Defendants in the United States District Court for the Eastern District of California, alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* The district court entered default judgment against the Egyptian Defendants in April 2001; however, the default was set aside in July 2003 because the sixty-day answer time period provided by the FSIA, *see* 28 U.S.C. § 1608(d), had not run at the time the default was entered.

In November 2005, Loomis filed a cross-claim against the Egyptian Defendants for breach of contract and sought indemnity against Lasheen's claims. After the Egyptian Defendants failed to respond to Loomis' cross-claim, the district court struck their answer to Lasheen's claims and again entered default judgment in favor of both Loomis and Lasheen.

Loomis also filed a motion for summary judgment against Lasheen, which the district court denied. Loomis appealed the denial of the motion. However, Lasheen and Loomis later reached a settlement agreement conditioned on the district court's determination that the FSIA does not shield the Egyptian Defendants from liability. Lasheen and Loomis filed a joint special motion seeking such a declaration. To enable

consideration of the joint motion, the district court set aside its default judgment for the limited purpose of allowing the Egyptian Defendants to oppose the motion. In February 2008, the district court concluded that the FSIA did not deprive federal courts of jurisdiction over the claims against the Egyptian Defendants because the commercial activities and waiver exceptions applied. The Egyptian Defendants appealed.

## II

We first review the district court's determination that the FSIA does not immunize the Egyptian Defendants against Loomis' claims due to the commercial activities exception. We agree with the district court that Loomis' claims arise out of the Egyptian Defendants' commercial activities within the United States, and thus the Egyptian Defendants are not immune.

**[1]** Pursuant to the FSIA, "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in" the FSIA. 28 U.S.C. § 1604. "Under the Act, a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). Once a party "offers evidence that an FSIA exception to immunity applies, the party claiming immunity bears the burden of proving by a preponderance of the evidence that the exception does not apply." *Joseph v. Office of the Consulate Gen. of Nig.*, 830 F.2d 1018, 1021 (9th Cir. 1987). We review FSIA immunity determinations de novo. *Corzo v. Banco Cent. de Reserva del Peru*, 243 F.3d 519, 522 (9th Cir. 2001).

**[2]** The FSIA does not provide foreign sovereign immunity "in any case . . . in which the action is based upon a commercial activity carried on in the United States by the foreign state." § 1605(a)(2). It is undisputed that each of the three

Egyptian Defendants qualifies as a "foreign state" under the FSIA.[2] Thus, application of the commercial activities exception turns on whether the claims before us are "based upon a commercial activity carried on in the United States."

"Commercial activity" is defined in the FSIA as "either a regular course of commercial conduct or a particular commercial transaction or act." § 1603(d). "Commercial activity carried on in the United States by a foreign state" refers to commercial activity carried on by the foreign state that has substantial contact with the United States. § 1603(e). "The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." § 1603(d).

[3] In *Nelson*, the Supreme Court held that commercial activity under the FSIA refers to "only those powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns." 507 U.S. at 360 (quotations omitted). "[A] foreign state engages in commercial activity . . . where it acts in the manner of a private player within the market." *Id.* (quotation omitted); *see also* Restatement (Third) of Foreign Relations Law § 451 (1987) ("Under international law, a state or state instrumentality is immune from the jurisdiction of the courts of another state, except with respect to claims arising out of activities of the kind that may be carried on by private persons."). Thus the relevant question "is whether the particular actions that the foreign state performs . . . are the *type* of actions by which a private party engages in trade and traffic or commerce." *Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992) (quotation omitted). We do not consider whether the specific act was one that only a sovereign

---

[2]A foreign state includes "political subdivision of a foreign state or an agency or instrumentality of a foreign state." § 1603(a). An "agency or instrumentality of a foreign state" includes "an organ of a foreign state or political subdivision thereof." § 1603(b).

would actually perform. *Sun v. Taiwan*, 201 F.3d 1105, 1109 (9th Cir. 2000). Instead, we consider whether the "category of conduct" is commercial in nature. *Id.*

Application of the commercial activities exception is predicated on the existence of a sufficient nexus between the plaintiff's asserted cause of action and the foreign state's commercial activity. "The commercial activity relied upon . . . to establish jurisdiction must be the activity upon which the lawsuit is based. The focus must be solely upon those specific acts that form the basis of the suit." *Am. W. Airlines, Inc. v. GPA Group, Ltd.*, 877 F.2d 793, 796-97 (9th Cir. 1989) (quotation, emphasis, and citation omitted). In other words, the phrase "based upon" in § 1605(a)(2) "is read most naturally to mean those elements of a claim that, if proven, would entitle a plaintiff to relief under [its] theory of the case." *Nelson*, 507 U.S. at 357.

**[4]** Loomis alleges that the Egyptian Defendants failed to indemnify it for the costs of litigating against Lasheen as required by the Agreement. By contracting with a company to manage a health benefits plan and agreeing to indemnify that company, the Egyptian Defendants did not act with the powers peculiar to a sovereign, but instead acted as private players in the market. Contrary to the Egyptian Defendants' assertions, it is irrelevant whether entering into the Agreement was "incidental" to sponsoring an educational program, even assuming that sponsoring an educational program is a sovereign activity. *See* § 1603(d). Thus, entering into the Agreement and allegedly breaching that Agreement constitute commercial activity.

Loomis' claim is based upon this commercial activity. To the extent that the Egyptian Defendants argue that Loomis' claims are based on Egyptian sponsorship of an educational program, they are simply incorrect; whether or not the Egyptian Defendants were engaged in running an educational program does not relate to Loomis' recovery in any way. In

contrast, the Egyptian Defendants' alleged breach of the Agreement determines whether Loomis is entitled to relief under its theory of the case. *See Nelson*, 507 U.S. at 357.

The Egyptian Defendants also argue that even if the commercial activities exception applies to claims against the Embassy of Egypt and the Cultural and Educational Bureau, it does not apply to claims against Egypt because there is no admissible evidence that Egypt was involved with the Agreement or the Plan. This assertion is inaccurate. A Loomis employee declared: (1) "All fees, premiums and claim funds came directly from Egypt"; (2) "The Plan was funded entirely by the Egyptian Government"; and (3) "No documents related to the provisions and/or administration of the Plan were ever approved or signed without the permission of the Government of Egypt." Even assuming that the involvement of its Embassy and the Cultural and Educational Bureau was insufficient to demonstrate Egypt's involvement with the Plan, the employee's declaration supports a determination that Egypt was involved in both the provision and administration of the Plan.

**[5]** Finally, the Egyptian Defendants assert in their reply brief that Lasheen and Loomis can "point to no specific conduct of [Egypt] within the United States forming an element of their claims."[3] However, the above-quoted statements regarding Egypt's payment history and signing authorizations rebut this claim. Further, the fact that Loomis and the Cultural and Educational Bureau were physically located in the United States at all relevant times leads us to conclude that Egypt's commercial activities had "substantial contact with the United

---

[3]Normally the Egyptian Defendants would have waived this argument because they did not raise it in their opening brief. *Bazuaye v. INS*, 79 F.3d 118, 120 (9th Cir. 1996). However, because the argument challenges our subject matter jurisdiction, and challenges to subject matter jurisdiction cannot be waived, we will address it. *See Am. Fire & Cas. Co. v. Finn*, 341 U.S. 6, 18 n.17 (1951).

States." § 1603(a). Loomis' claims against all three Egyptian Defendants arose out of the Defendants' direct involvement in commercial activity within the United States. We therefore agree with the district court's determination that the Egyptian Defendants are not immune from Loomis' claims under the FSIA. Because the commercial activities exception applies to Loomis' claims against the Egyptian defendants, we need not address whether the waiver exception also applies to these claims.

## III

The Egyptian Defendants also argue that the district court erred in failing to address separately whether they were entitled to sovereign immunity against Lasheen's claims. We agree that the district court should have conducted this distinct analysis and remand to the district court to make that determination in the first instance.

Instead of analyzing whether the FSIA immunized the Egyptian Defendants against Lasheen's claims, the district court reasoned that "the moving parties ha[d] only argued that the . . . exception[s] appl[y] to the Agreement between Loomis and the Egyptian defendants." (emphasis omitted). Based on this reasoning, the court did not consider whether the Egyptian Defendants are entitled to sovereign immunity as to Lasheen's claims.

**[6]** We conclude the district court erred in holding that the question of immunity against Lasheen was not before it. Loomis and Lasheen's joint motion requested an order stating that the Egyptian Defendants "are not immune to this Court's jurisdiction because statutory exceptions to the Foreign Sovereign Immunities Act ('FSIA') are applicable here." Similarly, Loomis and Lasheen's memorandum refers to the Egyptian Defendants' potential immunity from suit generally. Because both Loomis and Lasheen filed the joint motion, the district court should have considered whether the Egyptian

Defendants are entitled to sovereign immunity against each plaintiff.

Moreover, the existence of an exception under the FSIA for Loomis' claims does not control whether the FSIA blocks Lasheen's claims. The commercial activities exception applies when "the action is based upon a commercial activity carried on in the United States by the foreign state," and the waiver exception applies when "the foreign state has waived its immunity either explicitly or by implication." § 1605(a)(1)-(2). A court must analyze each claim and determine if it is "based upon" commercial activity or whether the foreign state has waived its sovereign immunity as to that claim.

The fact that an exception to the FSIA permits Loomis' claims does not indicate that the exception applies to Lasheen's claims. Lasheen sued the Egyptian Defendants for violations of ERISA. In contrast, Loomis asserts a claim against the Egyptian Defendants for breach of contract. These claims have different factual and legal bases; it is entirely possible that Loomis' claims arise out of the Egyptian Defendants commercial activities, but Lasheen's do not. Similarly, even assuming the Egyptian Defendants have waived their sovereign immunity with respect to all claims brought by Loomis, they may not have waived their immunity against Lasheen's claims.

**[7]** The parties disagree as to whether the record permits us to determine the applicability of the commercial activities and waiver exceptions to Lasheen's claims. We decline to resolve this disagreement because the district court should have the opportunity to determine questions of sovereign immunity in the first instance. We therefore reverse the district court's determination that the question of whether the FSIA immunized the Egyptian Defendants from Lasheen's claims was not before it and remand to the district court to determine whether

either the commercial activities or waiver exception permits Lasheen's claims to proceed.

## IV

**[8]** Finally, Loomis and Lasheen move for an award of attorneys' fees and costs. Although the Agreement states that the Egyptian Defendants must "indemnify [Loomis] and hold it harmless against loss, damages, and expense, including attorneys' fees," the Agreement expressly limits this indemnification to loss "occasioned by claims, demands or lawsuits brought against [Loomis] to recover benefits under the [Plan]." Under Pennsylvania law,[4] an indemnitee may recover attorneys' fees and costs incurred in the underlying defensive action, but not those incurred during the indemnification action. *Boiler Eng'g & Supply Co. v. Gen. Controls, Inc.*, 277 A.2d 812, 814 (Pa. 1971); *see also Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 117 (3d Cir. 1992). Although the Agreement may give Loomis the right to recover attorneys' fees and costs incurred in defending against Lasheen's action, the contract gives it no right to recover attorneys' fees incurred in the matter before us. Loomis and Lasheen have not pointed to any statutory provision, either within the FSIA or elsewhere, that allows recovery of costs or attorneys' fees in this case.[5] We accordingly deny their request.

## V

For the stated reasons, we **AFFIRM** the district court's determination that the FSIA does not deprive the federal courts of subject matter jurisdiction over Loomis' claims

---

[4]The Agreement provides that it "shall be enforced under the laws of the Commonwealth of Pennsylvania."

[5]If such a statutory provision does exist, Loomis and Lasheen have waived their right to recover pursuant to that provision because "[a]rguments made in passing and inadequately briefed are waived." *Maldonado v. Morales*, 556 F.3d 1037, 1048 n.4 (9th Cir. 2009).

against the Egyptian Defendants. We **REVERSE** the district court's determination that the issue of whether the FSIA immunizes the Egyptian Defendants against Lasheen's claims was not before it and **REMAND** for it to make that determination in the first instance. The appellees' request for costs and attorneys' fees on appeal is **DENIED**. Each party shall bear its own costs on appeal.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**