**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| KULVIR SINGH BARAPIND, *Plaintiff-Appellant*, | No. 14-16983 |
| | D.C. No. |
| v. | 1:13-cv-00667-AWI-GSA |
| GOVERNMENT OF THE REPUBLIC OF INDIA; STATE GOVERNMENT OF PUNJAB; THE PUNJAB POLICE, *Defendants-Appellees*. | OPINION |

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, District Judge, Presiding

Argued and Submitted October 20, 2016
San Francisco, California

Filed December 21, 2016

Before: Carlos T. Bea and Sandra S. Ikuta, Circuit Judges,
and Jane A. Restani, Judge.[*]

Opinion by Judge Restani

---

[*] The Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

## SUMMARY[**]

### Foreign Sovereign Immunity

Affirming the dismissal for lack of subject matter jurisdiction of an action brought against the Government of the Republic of India, the State Government of Punjab, and the Punjab Police, the panel held that the defendants did not waive their sovereign immunity through their diplomatic communications with the United States.

The plaintiff alleged that by subjecting him to post-extradition torture, the Indian government violated an understanding with the United States Department of State. The panel held that this understanding was not an implicit waiver of sovereign immunity by the Indian government. The panel concluded that none of the three circumstances that ordinarily give rise to an implied waiver was present. The understanding was not an agreement to arbitration in the United States; it was not a responsive pleading that failed to raise the defense of sovereign immunity; and there was no choice-of-law agreement. In addition, the plaintiff did not meet his burden of proving that the Indian government contemplated the involvement of the courts of the United States.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Emily M. Alban (argued) and Clifton S. Elgarten, Crowell & Moring, Washington, D.C.; Jaspreet K. Singh, International Center for Advocates Against Discrimination, Portland, Oregon; for Plaintiff-Appellant.

Juan C. Basombrio (argued) and Katherine J. Santon, Dorsey & Whitney LLP, Costa Mesa, California, for Defendants-Appellees.

**OPINION**

RESTANI, Judge:

Plaintiff-Appellant Kulvir Singh Barapind ("Barapind") appeals the district court's order dismissing his complaint for lack of subject matter jurisdiction. We hold that the district court did not have jurisdiction over Barapind's claim because the Defendants-Appellees, the Government of the Republic of India, the State Government of Punjab, and the Punjab Police (collectively, "Indian government"), did not waive their sovereign immunity through their diplomatic communications with the United States. Accordingly, we affirm.

*BACKGROUND*

Barapind, an Indian citizen and a Sikh, entered the United States on April 25, 1993, and soon thereafter applied for asylum and withholding of deportation. Barapind alleges that, in India, he had joined a Sikh-nationalist, political organization that supported the secession of the State of

Punjab from India. He maintains that, due to his involvement with that organization, the "Indian security forces" arrested him multiple times and subjected him to torture.

On November 29, 1994, while litigation relating to Barapind's immigration claims was pending, the Indian government submitted a request for Barapind's extradition pursuant to an extradition treaty. *See* Extradition Treaty between the U.S. & Gr. Brit. & Exch. of Notes Extending the Applicability of the Treaty to Palestine & Trans-Jordan., Gr. Brit.-U.S., art. 9, Dec. 22, 1931, 47 Stat. 2122.[1] On September 18, 1997, "[t]he United States filed a complaint on India's behalf" in the United States District Court for the Eastern District of California and "requested a warrant to bring Barapind before an extradition court for a hearing to determine extraditability." *Barapind v. Enomoto*, 400 F.3d 744, 747 (9th Cir. 2005). Ultimately, on November 9, 2005, the district court certified Barapind's extraditability for three of the murder charges brought against him in India. *In re Extradition of Singh*, Nos. 01-6215 OWW, 98-5489 OWW, 2005 WL 3030819, at *1 (E.D.C.A. Nov. 9, 2005).

Barapind sought relief from extradition pursuant to the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment ("the Convention") by submitting an application to the United States Department of State ("the Department"). Barapind argued before the Department that under the Convention, as implemented by the Foreign Affairs Reform and

---

[1] In assessing the extradition request, the district court considered this treaty, one between the United States and Great Britain, as it was the applicable treaty at the time of India's request. *In re Extradition of Singh*, 170 F. Supp. 2d 982, 986 (E.D.C.A. 2001).

Restructuring Act of 1998 ("FARRA"), the United States would violate 22 C.F.R. §95.2(b) if it extradited Barapind to India because he would "more likely than not" be tortured there, that diplomatic assurances would be insufficient to guarantee that he would not be tortured, and that he would be denied a fair trial in India.  Thereafter, the Department and the Indian government exchanged a series of diplomatic notes and, in those notes ("the Understanding"), the Indian government stated that Barapind would not be tortured.

The substance of the Understanding is found in internal Department memoranda.  In response to a January 13, 2006, request by the United States for India to "assess the merit of Barapind's [torture] claim" due to the United States's obligations under the Convention and 22 C.F.R. § 95.2, the Indian government, through its Ministry of External Affairs, provided the following response on February 7, 2006:

> India has signed [the Convention].  As a signatory, India has good-faith obligation not to act against the objectives and purposes of the Convention.  The Indian constitution provides for the protection of life and personal liberty. . . . India has legislation for the protection of human rights. . . . Indian criminal law prohibits the use of force or causing hurt to extort confession.  Persons violating these provisions are subject to prosecution and imprisonment. . . .

> Thus [Barapind] on extradition to India will be dealt in accordance with the law.  He will be entitled to all rights of defence, protection,

and remedies available and shall not be subject to any kind of torture.

ER 242–43.  Similarly, in response to a March 7, 2006, follow-up request from the United States, the Indian government provided the following response on March 28, 2006:

[Barapind] on extradition to India, will be dealt with in accordance with the law.  He will be entitled to all the rights of defence, protection and remedies available and shall not be subjected to torture, as defined in [the Convention].

. . . India as a signatory to the Torture Convention has a good faith obligation not to act against the objectives and purposes of the convention.  Indian criminal law prohibits the use of force or causing hurt to extort confession.   The judicial-decisions have interpreted the law to cover not only the physical hurt but the mental derangement/sufferings also.   Persons violating these provisions are subject to prosecution and imprisonment.

ER 384.

Following these assurances, in June 2006 the Department surrendered Barapind to the Indian government.  After standing trial on the three criminal charges, in May 2008, Barapind was acquitted on all three charges. Barapind alleges that eventually he resumed his religious and political

activities in India.  On September 20, 2012, Indian police forces arrested Barapind and allegedly subjected him to acts of torture from September 21–25, 2012.

On May 7, 2013, Barapind filed the instant complaint, arguing that the Indian government violated the Understanding when it subjected Barapind to post-extradition torture.  The Indian government moved to dismiss on several grounds, including a factual challenge to subject matter jurisdiction.  On September 26, 2014, the district court dismissed Barapind's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, holding that the Indian government had not waived its sovereign immunity.  Barapind appeals.

## *JURISDICTION AND STANDARD OF REVIEW*

We have jurisdiction pursuant to 28 U.S.C. § 1291.  We review de novo questions of law, including determinations of immunity under the Foreign Sovereign Immunities Act of 1976 ("FSIA").  *Embassy of the Arab Republic of Egypt v. Lasheen*, 603 F.3d 1166, 1170 (9th Cir. 2010); *Exp. Grp. v. Reef Indus., Inc.*, 54 F.3d 1466, 1469 (9th Cir. 1995).

When, as here, a defendant asserts foreign sovereign immunity through a factual challenge and offers evidence to dispute a plaintiff's jurisdictional allegations, "no presumptive truthfulness attaches to plaintiff's allegations" and the plaintiff "has the burden of going forward with evidence by offering proof that one of the FSIA exemptions applies."  *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (quoting *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009)); *Siderman de Blake v. Republic of Arg.*, 965 F.2d 699, 708 n.9 (9th Cir. 1992)).  If the plaintiff meets

its burden, then the defendant "bears the burden of proving by a preponderance of the evidence that the exception to sovereign immunity does not apply." *Terenkian*, 694 F.3d at 1131. Even if there are material facts in dispute, we "may still evaluate the merits of the jurisdictional claims." *See id.* Additionally, we review for clear error a district court's factual findings on jurisdictional issues. *Adler v. Fed. Republic of Nigeria*, 107 F.3d 720, 723 (9th Cir. 1997).

## *DISCUSSION*

Barapind argues that the district court had subject matter jurisdiction over his claim because the Indian government, through its reference in the Understanding to the Convention and its diplomatic assurances not to torture Barapind, implicitly waived its sovereign immunity. Barapind contends that this interpretation is appropriate because India has only signed, but not ratified, the Convention and, therefore, the reference to the Convention is a reference to law of the United States. We disagree.

The FSIA is the "sole basis" upon which jurisdiction may be obtained over a foreign state. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). Thus, if a foreign state is immune from suit, jurisdiction is lacking. *See id.* Foreign states, including their political subdivisions, agencies, and instrumentalities, are typically immune from suit in federal and state courts in the United States. 28 U.S.C. §§ 1603(a), 1604. The FSIA, however, does provide for waivers of such immunity by the foreign state "either explicitly or by implication[.]" *Id.* at § 1605(a)(1). "The waiver exception is narrowly construed." *Joseph v. Office of the Consulate Gen. of Nigeria*, 830 F.2d 1018, 1022 (9th Cir. 1987); *see also Corporacion Mexicana*

*de Servicios Maritimos, S.A. de C.V. v. M/T Respect*, 89 F.3d 650, 655 (9th Cir. 1996) ("[C]ourts rarely find that a nation has waived its sovereign immunity without *strong evidence* that this is what the foreign state *intended*." (quoting *Rodriguez v. Transnave Inc.*, 8 F.3d 284, 287 (5th Cir. 1993))).

We have explained that an implied waiver may be found ordinarily in only the following three circumstances: "(1) a foreign state has agreed to arbitration in another country; (2) a foreign state has agreed that a contract is governed by the law of a particular country; and (3) a foreign state has filed a responsive pleading in a case without raising the defense of sovereign immunity." *In re Republic of Philippines*, 309 F.3d 1143, 1151 (9th Cir. 2002) (quoting *Joseph*, 830 F.2d at 1022). However, these circumstances are not "an exclusive list of the circumstances giving rise to implied waivers," and we have also recognized an implied waiver "where a written agreement entered into by a foreign sovereign 'contemplates adjudication of a dispute by the United States courts.'" *Siderman de Blake*, 965 F.2d at 721 (quoting *Joseph*, 830 F.2d at 1023).

The Understanding is not an implicit waiver of sovereign immunity by the Indian government.[2]  Not only does the

---

[2] Barapind does not argue that the Indian government explicitly waived its sovereign immunity nor does the evidence support such an explicit waiver. *See Aquamar S.A. v. Del Monte Fresh Produce N.A., Inc.*, 179 F.3d 1279, 1292 (11th Cir. 1999) ("An express waiver . . . must give a 'clear, complete, unambiguous, and unmistakable manifestation' of the sovereign's intent to waive its immunity."); *see also* H.R. Rep. No. 1487, 94th Cong., 2d Sess. 18 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6617 ("With respect to explicit waivers, a foreign state may renounce its immunity by treaty, . . . [or] in a contract with a private party.").

Understanding not match any of the three circumstances that ordinarily give rise to an implied waiver, but it also does not demonstrate that India intended the Understanding to be enforceable in United States courts.

First, Barapind has not met his burden of demonstrating that any of the three circumstances that ordinarily give rise to an implied waiver are implicated here. The Understanding is plainly neither an agreement to arbitrate nor a responsive pleading. Moreover, we need not address whether the notes formed a "contract" between the Department and the Indian government, because even if they did, they do not specify that the law of a particular country should govern that contract, nor do they otherwise "contemplate[] adjudication of a dispute by the United States courts." *Joseph*, 830 F.2d at 1023.

Nor does the Understanding demonstrate an agreement regarding which country's law would govern. We have explained in this context that a choice-of-law provision should clearly identify which country's law governs, a requirement that flows from our rule that we construe waivers narrowly. Specifically, in *Siderman de Blake*, we explained that our finding of waiver in *Joseph* did not fall into one of the categories that ordinarily give rise to an implied waiver because the contract did not "provide specifically for the adjudication of disputes in the United States [or] state that United States law would govern such actions." *Siderman de Blake*, 965 F.2d at 721; *see also Eckert Int'l, Inc. v. Gov't of the Sovereign Democratic Republic of Fiji*, 32 F.3d 77, 78, 80–82 (4th Cir. 1994) (holding that a sovereign had waived its immunity where it was party to a consulting contract with a choice-of-law provision that explicitly stated "[i]n the event of any controversy, this Agreement shall be construed and

interpreted according to the laws of the state of Virginia in the United States").

The Understanding does not contain a choice-of-law provision. Rather than specifying with reasonable certainty which country's law should govern or the forum in which suit may be brought, the Understanding discusses both a United Nations document—the Convention—and Indian laws, such as the Indian constitution and the Indian Penal Code. Moreover, the Understanding contemplates that the conduct at issue—the potential torture of Barapind—would occur in India. At best, the Understanding is ambiguous regarding choice of law. Thus, Barapind has not demonstrated that the Indian government, by and through the Understanding, has agreed that the law of a particular country should govern a contract. *See In re Republic of Philippines*, 309 F.3d at 1151 (quoting *Joseph*, 830 F.2d at 1022).

Second, Barapind has not met his burden of proving that the Indian government contemplated the involvement of the courts of the United States. *See Siderman de Blake*, 965 F.2d at 721–22. For example, India's assurances never explicitly discuss an intent to be bound by United States law, such as FARRA. Whereas the United States's communications to India cited 22 C.F.R § 95.2 and mentioned the United States's obligations under FARRA to not extradite persons if it is "more likely than not" they will be tortured, India's communications discuss only India's obligations not to torture Barapind under the Convention, an international document, as well as Indian laws. It is clear that the Understanding's reference to the Convention is not itself a reference to United States law because the Convention is not self-executing and by itself does not have the status of law

within the United States.[3]  And, the present case is unlike our decision in *Joseph*, where we considered a lease agreement between Nigeria and a landlord in California that provided for "adjudication of landlord-tenant disputes in court."  830 F.2d at 1023.  We noted that "[i]n light of the wholly local nature of the transaction, it is virtually inconceivable that the Consulate contemplated that adjudication of disputes would occur in a court outside of the United States[,]" but nevertheless declined to rely solely on this implied waiver of Nigeria's sovereign immunity.  *Id.* at 1023 & n.6.  Here, we do not believe it reasonable to assume India intended to be bound by a law of the United States or contemplated that adjudication of disputes would occur in a court of the United States because the entirety of the conduct at issue—the potential torture of Barapind—was reasonably contemplated to occur only in India.

The Understanding, moreover, does not show an intent by the Indian government to avail itself of the privileges or protections of the courts of the United States.  For instance, in *Siderman de Blake*, we held that Argentina impliedly waived its immunity when it engaged United States courts by filing a letter rogatory in a court of the United States, thereby creating a "direct connection between the sovereign's activities in our courts and the plaintiff's claims for relief."  965 F.2d at 721; *see also Smith v. Socialist People's Libyan*

---

[3] After oral argument, Barapind filed a letter pursuant to Federal Rule of Appellate Procedure 28(j), in which he argued that Article 14 of the Convention provides a right to monetary damages.  Appellant's Citation to Suppl. Authorities 1, ECF No. 35.  Barapind, however, has not pointed to a source of United States law that expressly implements Article 14. Whether prior laws may provide the same relief in the United States and thereby fulfill international commitments does not aid Barapind's reliance on the Convention as the source of United States law.

*Arab Jamahiriya*, 101 F.3d 239, 246 (2d Cir. 1996) (requiring for implied waiver a "close relationship" between a written agreement and United States litigation).  Unlike in *Siderman de Blake*, the Indian government did not directly file documents in a court of the United States for the purposes of effecting Barapind's extradition.  Instead, the Indian government used diplomatic channels to request Barapind's extradition from the United States, and the United States government "filed a complaint on India's behalf" in district court, seeking a certificate of extraditability.  *See Barapind*, 400 F.3d at 747.  This use of diplomatic channels does not, on its own, create the necessary relationship between the Indian government and our courts.  *See Blaxland v. Commonwealth Dir. of Pub. Prosecutions*, 323 F.3d 1198, 1206 (9th Cir. 2003) (holding that Australia had not impliedly waived its immunity when it used diplomatic channels to effect extradition).

Because the Understanding does not expressly or implicitly indicate that India contemplated adjudication of disputes by the United States courts, Barapind's argument that claims under the Convention and the Torture Victim Protection Act ("TVPA") could be adjudicated in United States courts is inapposite.  *See Amerada Hess Shipping Corp.*, 488 U.S. at 442–43 (concluding that Argentina had not waived its immunity, explicitly or implicitly, "by signing an international agreement that contains no mention of a waiver of immunity to suit in United States courts or even the availability of a cause of action in the United States").  Regardless of whether parties can adjudicate Convention and TVPA claims in federal court, the Understanding does not indicate that India intended to adjudicate such disputes in this country, and therefore India did not implicitly waive its sovereign immunity on this ground.

But even if we consider Barapind's arguments that his alleged Convention and TVPA claims are cognizable in federal court, we would conclude that he is mistaken. Article 14 of the Convention does not create a private right of action in the United States for damages by victims of torture occurring outside of the United States. The Senate conditioned ratification on its understanding that Article 14 "requires a State Party to provide a private right of action for damages *only* for acts of torture committed in territory under the jurisdiction of that State Party." 136 Cong. Rec. S17486-01, S17492 (daily ed. Oct. 27, 1990) (emphasis added). Barapind alleges that the torture occurred in India. Therefore, even if a cause of action for damages existed under the Convention, Barapind has been unable to identify a source of United States law that creates a similar action for torture alleged to have been committed in a foreign country.

Barapind's argument that the TVPA creates a cause of action also fails. The Supreme Court has interpreted the word "individual" in the TVPA as "authoriz[ing] liability solely against natural persons." *Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702, 1708 (2012). The Indian government is not a "natural person" and is, therefore, not subject to suit under the TVPA.

### *CONCLUSION*

For all of these reasons, Barapind has not supplied sufficient evidence on which we would find it appropriate to reverse the district court's dismissal for lack of jurisdiction based on India's sovereign immunity. The district court's order dismissing for lack of subject matter jurisdiction is

**AFFIRMED.**